**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LOUIS A. DAMIANI,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **THOMAS MOMME, et al.** | : | **No. 11-2534** |
| **Defendants.** | : | |

**MEMORANDUM**

**Schiller, J.**                                                                 **May 11, 2012**

This is an excessive force case. The parties have filed a number of motions *in limine*. This memorandum will address the following motions: Defendants' Motion to Preclude Expert Testimony of R. Paul McCauley and to Strike Expert Report, Defendants' Motion to Preclude Evidence of Allegations of Prior Conduct, and Defendants' Motion to Preclude Evidence of Medical Causation or Prognosis.

## I.      BACKGROUND

Louis Damiani contends that Defendant police officers repeatedly hit him and then shoved him into a truck during a confrontation that occurred outside of his house. One of the officers handcuffed Damiani's hands behind his back and pinned Damiani's neck and back against a truck. The officers also held Damiani by the handcuffs and continually pulled up on the handcuffs, causing sharp pain. Additionally, the officers injured Damiani when they dragged him backwards by the handcuffs.

## II.     DISCUSSION

### A..     *Daubert* **Motion**

Defendants seek to preclude the expert testimony and expert report of Dr. R. Paul McCauley. Dr. McCauley is a Professor Emeritus of Criminology at the Indiana University of Pennsylvania. (Defs.' Mot. to Preclude Expert Testimony of R. Paul McCauley [Defs.' *Daubert* Mot.] Ex. A [McCauley Report] at 1 .) He is a former Pennsylvania municipal police officer who has written and taught extensively on police administration, operations, and policies. (*Id*. at 1-2.)

Dr. McCauley's examination and analysis of the events surrounding Damiani's claim "are based on generally accepted qualitative methodologies commonly used in the social sciences . . . includ[ing] comparative analysis, ethnography/description, content analysis, and case study as applied to the relevant issues." (*Id*. at 2.) To reach his opinions, he reviewed the Amended Complaint, Plaintiff's attorney's notes of one of Defendants' depositions, a general order from the Lower Providence Township Police Department on the use of force, and the Lower Providence Township Police Department Incident Investigation Report. (*Id*. at 2-3.)

Dr. McCauley opines that: (1) accepting Damiani's version of the facts, the officers' conduct toward him after the handcuffs were applied failed to comport with accepted police practices; (2) the police conduct was unnecessary, punitive, abusive, and contrary to accepted police practices; (3) Damiani should have been treated by medical professionals as soon as the officers knew he was injured or Damiani requested medical treatment; and (4) a person in handcuffs should be released immediately once the officer knows the person is not a safety risk and has not committed a crime. (*Id*. at 5.)

2

Federal Rule of Evidence 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)    the testimony is based on sufficient facts or data;

(c)    the testimony is the product of reliable principles and methods; and

(d)    the expert has reliably applied the principles and methods to the facts of the case.

The party offering the expert bears the burden of demonstrating admissibility. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 n.10 (1993). The district court acts as a gatekeeper to ensure that only reliable opinion testimony that fits the case and comes from qualified experts reaches the jury. *See Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003); *see also United States v. Mitchell*, 365 F.3d 215, 244 (3d Cir. 2004). However, the district court must be careful not to confuse its "gatekeeping function with the fact-finders' function as the assessor of credibility." *In re TMI Litig.*, 193 F.3d 613, 713 (3d Cir. 1999). Here, Defendants argue that Dr. McCauley's opinion is not based on sufficient facts because he relied on the Amended Complaint and the summary notes of Plaintiff's lawyer taken during the deposition of one of the Defendant police officers.

Although the Court agrees that Dr. McCauley's opinions rest on rather flimsy facts, Defendants' argument goes to the weight of the evidence, not its admissibility. *See Sonnier v. Field*, Civ. A. No. 05-14, 2007 WL 576655, at *5 (W.D. Pa. Feb. 21, 2007) (holding that failure of expert on police procedures to review any of the depositions did not preclude testimony). Nonetheless, to allow Dr. McCauley to offer his opinion that the officers' conduct was unnecessary, punitive, and abusive answers the very question tasked to the jury, and the Court will not permit an expert to

3

invade the province of the jury. *See Jackson v. City of Pittsburgh*, Civ. A. No. 07-111, 2010 WL 3222137, at *9 (W.D. Pa. Aug. 13, 2010) ("[A] properly qualified non-scientific expert may not offer an opinion as to an ultimate legal issue because to permit this type of evidence would subvert the jury's function to decide the disputed facts and issues after being properly instructed as to the law by the court."). Dr. McCauley may offer his opinion regarding the proper way to handcuff individuals so as to prevent injuries, as well as injuries that may result from improper handcuffing and escorting of individuals, but he may not answer the ultimate legal questions before the jury.

Another issue related to Dr. McCauley that has been brought to the attention of the Court involves the supplemental expert report Plaintiff's counsel served on Defendants' counsel on May 2, 2012. Prior to service of this supplemental expert report, Plaintiff's counsel informed the Court that "Dr. McCauley has now been furnished with additional testimony in this case, supportive of his conclusions, including the statement of a material witness." (April 30, 2012 letter from J. Stephen Woodside to the Court.) As a result, Plaintiff's counsel sought "[a]dditional time . . . to evaluate whether a supplemental report is in fact necessary, and if so, to produce such a report." (*Id.*) In response to the letter from Plaintiff's counsel, Defendants' counsel wrote to this Court and stated that "Plaintiff should not be permitted to provide a supplemental expert at this late juncture. . . . The deadline for supplemental reports has long expired and Defendants would be highly prejudiced by the disclosure of additional expert reports less than two (2) weeks before the commencement of trial."

The Court agrees with Defendants. Pursuant to this Court's September 13, 2011 Scheduling Order, expert rebuttal reports and depositions were to be completed by January 27, 2012. This date was subsequently extended to February 17, 2012. Trial is set to begin May 14, 2012. A supplemental

4

report served on Defendants' counsel less than two weeks before trial leaves Defendants without sufficient time to respond. For that reason, in response to the parties' correspondence, the Court entered an Order on May 3, 2012 barring supplemental expert reports.

Plaintiff now offers a number of reasons why Dr. McCauley's supplemental report is timely; under one scenario posited by Plaintiff, the supplemental report would be due on May 11, 2012, a mere three days before the trial is scheduled to begin. (*See* Pl.'s Br. in Opp'n to Defs.' Mot. to Expert Testimony of R. Paul McCauley at 8-10.) Plaintiff's alternative dates ignore the fact that this Court set dates for the close of expert discovery in an attempt to confuse what is very simple: expert discovery closed on February 17, 2012. Although the parties agreed to continue conducting discovery outside of the time limits set by this Court, including extending the date for supplemental expert reports to April 19, 2012, Plaintiff's latest expert submission is late even under the parties' agreement. Plaintiff had to consider that Defendants would object to a supplemental expert report served late and so close to the commencement of the trial.

The penalty for failing to provide information as required by the Federal Rules of Civil Procedure is preclusion of that information at the trial "unless the failure was justified or is harmless." Fed. R. Civ. P. 37(c)(1). Considering the factors set forth by the Third Circuit, the Court concludes that Dr. McCauley's supplemental expert report should be stricken. *In re TMI Litig.*, 193 F.3d at 721-22. Plaintiff's counsel offers no justification for the failure to provide his expert with the relevant information used to prepare the supplemental expert report. The untimely service of the expert's supplemental report places Defendants in the position of having no time to attack the late-served supplemental expert report unless this Court postpones a date-certain trial originally scheduled on September 13, 2011. Finally, the context in which this supplemental report was served

leads the Court to conclude that Plaintiff's conduct was willful. For example, Plaintiff's argument that the supplemental report is timely is belied by the April 30, 2012 letter seeking additional time to evaluate whether a supplemental report was needed and to produce such a report if necessary. The letter demonstrates Plaintiff's counsel's knowledge that additional expert reports would be untimely. The Court sets dates for the close of discovery, but if the parties elect to ignore those dates, they run the risk that the clock will run out on their ability to complete discovery. Furthermore, counsel for Plaintiff recently sought to postpone the trial in this matter and also failed to join in the joint pre-trial stipulation that the Court ordered the parties to submit, instead electing to file his own pretrial statement, which was also filed late. This consistent dilatory behavior is unacceptable, and the Court will not condone the behavior by allowing Plaintiff to place his adversaries at a disadvantage through a supplemental expert report served right before the start of the trial. Therefore, the supplemental report of Dr. McCauley is stricken.

###    B.    Motion to Preclude Allegation of Prior Conduct

Defendants also seek to exclude evidence "relating to allegations of prior acts of violence," which Plaintiff's counsel explored during depositions. They argue that, because prior wrongs are inadmissible to show conduct in conformity with a particular character trait, evidence of Defendants' prior wrongs are not admissible at trial. (Mem. of Law in Supp. of Defs.' Mot. to Preclude Evid. of Allegations of Prior Conduct at 1-3.) Furthermore, Defendants note that subjective intent is irrelevant to excessive force claims. (*Id.*)

The Federal Rules of Evidence prohibit the introduction of "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence may be admissible

to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b)(2). Given the claims that will go to trial, the Court sees no basis for admitting evidence of alleged prior wrongs committed by Defendants. This case hinges upon the objective reasonableness of the actions of the officers at the time in question, thereby rendering the underlying motivations for their actions irrelevant. *See Palmer v. Nassan*, 454 F. App'x 123, 125-26 (3d Cir. 2011). Because Plaintiff has proffered no permissible purpose to admit this evidence, the Court concludes that Plaintiff's purpose in introducing this evidence is to suggest the excessive force alleged by Damiani is consistent with Defendants' previous bad behavior. Therefore, the evidence is inadmissible under Federal Rule of Evidence 404(b).

### C.     Motion to Preclude Evidence of Medical Causation and Prognosis

Finally, Defendants seek to preclude Plaintiff from introducing expert testimony on the medical cause of Plaintiff's injuries. Defendants contend that Damiani failed to designate an expert on the issue of causation and that he may not do so at this late stage. Defendants maintain that "unless properly designated as an expert witness, a treating physician may not opine as to medical causation or prognosis." (Mem. of Law in Supp. of Defs.' Mot. in Limine to Preclude Evid. of Medical Causation and Prognosis at 3 (citing *Pease v. Lycoming Engines*, Civ. A. No. 10-843, 2012 WL 162551 (M.D. Pa. Jan. 19, 2012)).)

Provided Damiani seeks to introduce testimony from his treating physicians on the issue of causation and/or prognosis, this testimony would presumably be based on scientific, technical, or other specialized knowledge within the ken of an expert. Because such testimony would fall within the purview of Rule 702 of the Federal Rules of Evidence, Plaintiff was obligated to disclose his treating physicians as experts pursuant to Federal Rule of Civil Procedure 26(a)(2)(A).

7

Of course, as treating physicians, Damiani's doctors have personal knowledge that they learned from their examination of Damiani. This personal knowledge may even include the cause of Damiani's injuries as well as his prognosis. *See Pease*, 2012 WL 162551, at *13. Thus, his doctors are free to testify as to Plaintiff's statements to them during their care and treatment; as to their own examination, diagnosis, and treatment of Plaintiff; and as to Plaintiff's prognosis based on their observations during treatment. What these treating physicians may not do is offer independent opinions as to the cause of Plaintiff's injuries. That is sanction enough for the failure to designate an expert on medical causation.

## III.     CONCLUSION

Plaintiff's expert on police practices may testify as to proper police use of force but may not give an opinion on the ultimate legal questions before the jury. Plaintiff may not introduce character evidence of Defendants' prior alleged wrongful acts. Finally, Plaintiff's treating doctors may testify but may not offer independent opinions regarding the cause of Plaintiff's injuries. An Order consistent with this Memorandum will be docketed separately.